THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT SHAFFER, Defendant-Appellant.

Second District No. 75-540

Opinion filed June 10, 1977.

208

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

William J. Scott, Attorney General, of Chicago, and Peter J. Woods, State's Attorney, of Oregon (Raymond McKoski and James B. Zagel, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Robert Shaffer, defendant-appellant, hereinafter referred to as "defendant," was convicted at a bench trial of reckless homicide and failure to report an accident. He appeals from that conviction.

In the early evening of August 21, 1974, Nancy Reed left her home on Flagg Center Road in Ogle County to go for her customary evening bicycle ride. When she failed to return by her usual time, her parents became concerned and instituted a search.

At approximatley 11:30 p.m. on August 21, 1974, Nancy Reed's body was found in a ditch along Flagg Center Road. She was apparently the victim of a hit-and-run accident. An investigation of the scene produced ample evidence of such an accident, but no clues were found as to the identity of the vehicle involved.

In an effort to discover possible witnesses to the hit-and-run accident, the investigating officer, Deputy Melvin Messer of the Ogle County Sheriff's Department set up a roadblock at the scene of the accident. He did this on August 22 and 23 at the approximate time of the accident. Deputy Messer stopped all vehicles traveling on Flagg Center Road, a county road, explained to the drivers that he was investigating a hit-and-run accident, and asked them if they had been on Flagg Center Road at approximately 6:30 p.m. on August 21.

One of the vehicles stopped by Deputy Messer on August 23 was that of the defendant. When asked if he had been on Flagg Center Road at about 6:30 p.m. on the 21st, the defendant first indicated that he had been there,

but quickly changed his answer and said that he had been there at a later hour.

Because he had noticed some damage to the front end of the defendant's car, Deputy Messer recorded the car's make, color, and license number. After this momentary delay, defendant drove on his way.

A few minutes later while traveling on a nearby road, defendant was again stopped. This stop was made by Detective Garrett of the DeKalb County Sheriff's Department, who was assisting in the investigation. Detective Garrett stopped the defendant because he had noted the damage to the front end of the defendant's car. When asked if he had been on Flagg Center Road at about 6:30 in the evening of the 21st, the defendant again stated that he had been on the road at a later hour. The defendant then proceeded on his way.

On August 26, 1974, the defendant was arrested at his home in Oregon, Illinois, and given his *Miranda* warnings. He was then transported to the Ogle County Sheriff's Department. In the parking lot, Deputy Messer pointed out the damage to the front end of the car to the defendant. After again being given his *Miranda* warnings, the defendant made an oral statement. At trial, Deputy Messer recounted that statement in the following manner:

> "At that point, Mr. Shaffer sat down on the cement parking block and stated, 'Yes, I knew after I had been stopped the second time that it must have been me that hit the girl on the bicycle on Flagg Road,' he further stated that he knew he had hit something but didn't know what, that he had fallen asleep and when he woke up something was flying over the top or back of his car."

Defendant was then taken to the sheriff's office where, after again being given his *Miranda* warnings and reading and signing a voluntary statement form, he wrote out the following statement in his own hand:

> "I was driving my car west on Flagg Road on Aug. 21st about 6:30 P.M. and about one mile East of Chana Road I hit something on the side of the road (north side). I looked in the rear view mirror and saw something fly into the ditch. I stopped and examined my car and saw no damage and continued on to Oregon.
>
> My front end had previous damage but a definite dent probably made by something or somebody I hit is now there.
>
> On Aug. 23rd on the same road I was stopped by county officials and told about and asked about the accident. I told them I knew nothing about it. And with a clear conscience I knew nothing about it. Then going home to Oregon I put 2 + 2 together and realized that it must have been the girl I hit and not a sign as I previously thought.
>
> To explain why I did not stop at the accident I was asleep while

driving and did not see anything on road that I could have hit other than a road sign."

At trial Deputy Messer described the events following the defendant's writing of the above statement in the following manner:

"Q. At the time he signed it did he make any oral statements?

A. Yes, he stated that, he sat back in the chair and stated that he had had 75 accidents due to the problem of falling asleep at the wheel—

❋ ❋ ❋

MR. McKOSKI: Mr. Messer, did the defendant, Shaffer, say anything further?

A. Yes, he stated that he had had this problem of falling asleep for some two or three years and that he didn't know why he fell asleep.

Q. Was there any further conversation with Mr. Shaffer at that time?

A. He then stated that he hadn't wanted to read any newspapers or see any, he didn't want to know who he had hit."

The testimony of Deputy Messer concerning defendant's oral statements was corroborated in all material respects by the testimony of Detective Garrett.

Physical evidence connecting the defendant's car with the accident was also presented at trial.

Defendant was convicted of reckless homicide and failure to report an accident. He was sentenced to one year of periodic imprisonment and three years conditional discharge. Defendant appeals.

Defendant's first contention is that all the physical evidence, his written statement and his oral statements, were obtained by means of illegal police conduct. This argument is premised upon the contention that the initial stops by Deputy Messer and Detective Garrett were illegal seizures and that all information obtained as a result of these illegal seizures is the "fruit of the poisonous tree," and, therefore, should have been excluded from the trial. Defendant claims that the stops were illegal seizures because they were made without a warrant or probable cause.

■■ The first step in determining the legality of a search or seizure is to look at the reasonableness of the police conduct.

"In order to assess the reasonableness of ❋ ❋ ❋ conduct as a general proposition, it is necessary 'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interest of the private citizen' for there is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.' (*Camara v. Municipal Court*,

387 U.S. 523, 534-535 and 536-537, 18 L. Ed. 2d 930, 938-940, 87 S. Ct. 1727 (1967).) And in justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80.

We believe the conduct of Deputy Messer and Detective Garrett meets these criteria.

Deputy Messer's conduct was clearly reasonable. He was charged with investigating a hit-and-run accident that occurred on a relatively isolated county road. In an effort to find someone who had seen something that would be of aid to his investigation, Deputy Messer stopped the vehicles that traveled by the scene of the accident at the approximate time of the accident on the two days immediately following the hit-and-run accident.

It is clearly reasonable to believe that someone who was traveling down this county road at 6:30 p.m. on August 22 or 23 might also have been on the same road at the same time on August 21, and, therefore, might have seen something that would aid the investigation of the hit-and-run accident. This was the logic behind Deputy Messer's actions. Furthermore, the inconvenience to the citizens stopped was minimal. There was no search or frisk of their persons. They were stopped merely for the time it took to briefly explain the purpose of the road block and to ask if they had seen anything that would be useful to the police. After they answered they were allowed to proceed on their way.

We do not need to reach the question of whether Deputy Messer's conduct constituted a seizure within the technical meaning of the law, for whether it was or was not a seizure, his conduct was legal because it was reasonable under the circumstances and therefore met the criteria set down in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.

The conduct of Detective Garrett was also proper. Detective Garrett was investigating a hit-and-run accident when he saw a car in the area of the accident with a damaged front end. This clearly gave Detective Garrett reasonable grounds to believe that the car might have been involved in the crime. Therefore, Detective Garrett's stop of the defendant was also legal. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488; Code of Criminal Procedure of 1963, section 107—14 (Ill. Rev. Stat. 1973, ch. 38, par. 107—14); *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381; *People v. Talley* (1975), 34 Ill. App. 3d 506, 340 N.E.2d 167.

Therefore, we conclude that the stops of the defendant made by Deputy Messer and Detective Garrett were legal. Hence, any evidence obtained as a result of these stops was not the "fruit of the poisonous tree."

Defendant's second ground for appeal is his claim that there was insufficient evidence presented at trial to convict him of reckless homicide. A person commits reckless homicide if, while driving an automobile, he kills another without lawful justification. (Section 9—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—3).) The offense has the same elements as involuntary manslaughter, except reckless homicide is limited to the specific act of driving a motor vehicle.

The key element of reckless homicide is recklessness. Recklessness is defined by section 4—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 4—6):

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in a situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

A charge of reckless homicide may be justified by a combination of circumstances which taken together demonstrate a conscious disregard of a substantial risk that is likely to cause death or great bodily harm to another. (*People v. Baier* (1964), 54 Ill. App. 2d 74, 203 N.E.2d 633; *People v. Luttmer*, 48 Ill. App. 3d 303, 362 N.E.2d 1093.) While no one element of defendant's conduct establishes recklessness under the current state of Illinois law, taken as a whole, we feel defendant's conduct clearly establishes that he acted in a reckless manner.

To begin with, there is defendant's statement that he had had some 75 accidents due to falling asleep at the wheel. This statement demonstrates that defendant was on notice of the potential danger that occurred whenever he got behind the wheel of an automobile. The hazards of falling asleep behind the wheel are well known to all drivers.

While there is no Illinois case on this precise point, we find *State v. Gooze* (1951), 14 N.J. Super. 277, 81 A.2d 811, to be a very analogous case. Gooze knew he had a disease that could subject him to blackouts at unpredictable times. His doctor had warned Gooze not to drive alone, because he was subject to blackouts. Nevertheless, Gooze did drive alone and did have an accident that caused a death. On the basis of Gooze's knowledge of his medical condition, he was found guilty of a crime requiring willful and wanton disregard for the safety of others.

■■ In the case at hand, the defendant had prior knowledge of a similar condition, yet he, too, continued to drive alone, fully knowing the danger involved. This clearly is an indication of reckless behavior.

Besides driving while knowing he was subject to falling asleep at the

wheel, the record shows that defendant knew he struck something while he was asleep and yet did not stop to investigate what he hit. Failure to immediately stop and investigate when someone has struck some unknown object is a further indication of reckless conduct. *People v. Parra* (1975), 35 Ill. App. 3d 240, 340 N.E.2d 636.

■■ The record shows that defendant was on notice that he had a problem of falling asleep at the wheel, that on the evening of August 21, 1974, the defendant did fall asleep at the wheel, that the defendant did hit something, that defendant saw whatever he hit fly into a ditch, and that the defendant did nothing more than check for damage to his car. Even though defendant knew he hit some unknown person or thing, he made no effort to determine what he hit. The only concern he showed was for his car.

We believe that defendant's behavior before and after the accident, when taken as a whole, clearly establishes that he acted with a conscious disregard of a substantial risk likely to cause great bodily harm or death. Therefore, we must affirm the judgment of the trial court.

Judgment affirmed.

SEIDENFELD, P. J., and WOODWARD, J., concur.