# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 23

OCTOBER TERM, A.D. 2016

*March 1, 2017*

EDWARD CHRISTOPHER
BARROWES,

Appellant
(Defendant),

v.                                                     S-16-0155

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*

> Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*

> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Philip M. Donoho, Assistant Attorney General; Darrell D. Jackson, Faculty Director; K. T. Farrelly, Student Director; and Sierra M. Collver, Student Intern, of the Prosecution Assistance Program.  Argument by Ms. Collver.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]     Appellant Edward Barrowes challenges his conviction of aggravated vehicular homicide as defined by Wyo. Stat. Ann. § 6-2-106(b)(ii) (LexisNexis 2015).  He claims the evidence presented by the State was insufficient to establish that he drove in a reckless manner.  We affirm.

## ISSUES

[¶2]     Was the evidence sufficient to support the jury's verdict that Barrowes was guilty of aggravated homicide by vehicle?

## FACTS

[¶3]     Viewing the evidence in a light most favorable to the State, *see Hill v. State,* 2016 WY 27, ¶ 20, 371 P.3d 553, 560 (Wyo. 2016), the facts established at trial are as follows. Barrowes is a professional semi-trailer truck driver with a commercial driver's license.  A commercial driver's license certifies that a person has gone through the required training and testing and can legally operate a commercial motor vehicle weighing over a certain amount.  Those holding a commercial driver's license are subject to federal regulations because of the higher level of knowledge, experience, and skill required to drive a commercial motor vehicle.

[¶4]     The day before the accident, on April 21, 2015, Barrowes and his co-driver, Dennis Pehrson, departed Tremonton, Utah in a semi tractor pulling two trailers to the Denver area.  They left around 4:30 p.m., and Pehrson drove the entire stretch from Utah to Colorado, while Barrowes rested in the sleeper berth behind the driver's cabin.[1]  This portion of the trip lasted until approximately 1:00 a.m. on the morning of April 22. During at least some of the time while Barrowes was to be resting in the sleeper portion of the tractor, the evidence indicated that he was sending and receiving text messages and possibly talking on the phone.

[¶5]     Barrowes left the sleeper berth at around 2:00 a.m., while the two were waiting to pick up the return load and return to Utah.  Their freight[2] was ready to transport around 3:30 a.m.  Barrowes took the wheel for the return trip to Tremonton, and Pehrson climbed into the sleeper berth.

---

[1] A sleeper berth is a separate compartment in the tractor cab that commonly consists of a bed where drivers can rest when necessary.

[2] The loaded rig consisted of two trailers—a 53-foot trailer and a 27-foot tailing trailer with a combined weight of approximately 110,000 pounds.

1

[¶6]    Around 6:45 a.m., Barrowes stopped in the vicinity of Rawlins for an hour and forty-five minutes, but it is unclear what he did during that time.  He then continued west on Interstate 80.

[¶7]    Forty-five minutes after he got back on the road, another professional truck driver operating a tractor-trailer behind Barrowes' truck observed the vehicle swerving "pretty bad at times" for around three miles over a period of three or four minutes.  The vehicle was swerving so badly that the other truck driver did not pass and instead slowed down to keep some distance between the two rigs.  He observed that every time Barrowes' truck would straighten up, it would soon start swerving again.  The truck passed two exit ramps while the other driver observed its erratic movements.  The rig was travelling around 65 miles an hour, below the posted limit on I-80.

[¶8]    Meanwhile, another truck had broken down earlier on the west-bound shoulder of I-80 near Wamsutter.  The owner of the vehicle, Aleksandr Kozak, came to the scene to render assistance to the driver.  The rig was properly parked on the right shoulder of the road, and its hazard lights were flashing.  Emergency reflective triangles were placed along the road, and Kozak wore reflective clothing.  The weather was good and visibility was clear, so there were no impediments to seeing the broken-down truck.

[¶9]    After swerving for three to four minutes, Barrowes' truck veered right at 65 miles per hour and crashed into the parked tractor-trailer rig.  The truck struck Kozak as he was working on the truck and killed him.  Pehrson, who was asleep in the sleeper berth, was thrown from his bunk when the side of the cab came apart.  He suffered significant injuries that were not life-threatening.  Barrowes did not hit the brakes or take any other type of evasive action before the crash because he was asleep at the wheel.

[¶10]  Shortly after the crash, a highway patrolman arrived on the scene.  Barrowes told the trooper that he "did not manage [his] drowsiness appropriately."  The trooper asked Barrowes if he fell asleep at the wheel, and Barrowes said he had.

[¶11]  Over two hours after the crash, Barrowes sent a text message stating: "I was rushing to get to Tremonton . . . . I should not have allowed my mind to be rushed."  Barrowes told investigators of the Sweetwater County sheriff's office that he allowed scheduling to take precedence over tiredness, and he acknowledged that driving while drowsy is dangerous.

[¶12]  The next day, April 23, Barrowes was charged with involuntary manslaughter, a felony, for Kozak's death, and also with driving a commercial vehicle while ill or fatigued, a misdemeanor.  The State was later allowed to amend the information to replace the manslaughter charge with one count of aggravated homicide by vehicle.  Its motion to dismiss the misdemeanor charge without prejudice was granted.

[¶13] As the case proceeded, Barrowes filed a motion that he had written without his counsel's knowledge. In that motion, Barrowes made several inculpatory statements. He admitted that he had put his schedule ahead of tiredness and safety, ignored safety concerns, and passed exits right before the crash. He said that he tried to fight off fatigue, but failed to do so, which resulted in the fatal accident. However, he also blamed the Wyoming Highway Patrol in part because state troopers will ticket trucks parked on off-ramps to allow a driver to rest.

[¶14] A three-day jury trial was held. The evidence the State presented included the above facts and the statements Barrowes made in the motion he had filed on his own.[3] The jury found Barrowes guilty of aggravated homicide by vehicle. The district court sentenced him to a term of fourteen to eighteen years in prison. Barrowes timely perfected this appeal.

## STANDARD OF REVIEW

[¶15] When reviewing a sufficiency of the evidence claim, we must accept as true the State's evidence and give it the benefit of all reasonable inferences which can be drawn from it. *Sweets v. State*, 2013 WY 98, ¶ 14, 307 P.3d 860, 865 (Wyo. 2013). We cannot consider conflicting evidence presented by Barrowes. *Id.* "We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded that each of the elements of the crime was proven beyond a reasonable doubt." *Id.* We will not reweigh the evidence. *Levengood v. State*, 2014 WY 138, ¶¶ 11-12, 336 P.3d 1201, 1203-04 (Wyo. 2014).

## DISCUSSION

[¶16] Barrowes claims the evidence presented by the State was insufficient to establish that he drove in a reckless manner, which is an essential element of felony aggravated homicide by vehicle. He argues that he was at most criminally negligent, which would only make him guilty of misdemeanor homicide by vehicle.

[¶17] Our analysis begins by reviewing the elements of aggravated homicide by vehicle. The statute setting forth this crime provides as follows:

> (b) A person is guilty of aggravated homicide by vehicle and
> shall be punished by imprisonment in the penitentiary for not
> more than twenty (20) years, if:
>
>         *     *     *

---

[3] The statements in the motion were admissible under Wyoming Rule of Evidence 801(d)(2).

> (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

Wyo. Stat. Ann. § 6-2-106(b)(ii). In turn, recklessly is defined in Wyoming's Criminal Code:

> A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

Wyo. Stat. Ann. § 6-1-104(a)(ix). We have held that this definition applies to aggravated vehicular homicide cases. *Breazeale v. State*, 2011 WY 10, ¶ 15, 245 P.3d 834, 839-40 (Wyo. 2011).

[¶18] The district court also instructed the jury on the lesser included offense of homicide by vehicle:

> Except as provided in subsection (b) of this section [dealing with aggravated homicide by vehicle], a person is guilty of homicide by vehicle and shall be fined not more than two thousand dollars ($2,000.00) or imprisoned in the county jail for not more than one (1) year, or both, if he operates or drives a vehicle in a criminally negligent manner, and his conduct is the proximate cause of the death of another person.

Wyo. Stat. Ann. § 6-2-106(a). Criminal negligence consists of the following, as the district court properly instructed the jury:

> "Criminal negligence" is defined as the following conduct: A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation[.]

Wyo. Stat. Ann. § 6-1-104(a)(iii).

[¶19]   Barrowes argues that the evidence presented does not prove beyond a reasonable doubt that he acted recklessly, and that a reasonable jury could not have found that he did so.  He points to his compliance with the legal amount of non-driving (sleeper berth) time before the accident, and that his logbooks were properly maintained.  Additionally, Barrowes was not under the influence of alcohol or drugs, and he was driving under the speed limit at the time of the accident in good weather conditions.  He therefore contends that at most, he could only be properly convicted of misdemeanor homicide by vehicle.  However, the applicable standard of review requires us to accept as true the State's evidence and disregard any conflicting evidence presented by Barrowes.

[¶20]   This Court has not had occasion to decide a vehicular homicide case where a crash occurred solely due to a driver being tired and falling asleep at the wheel.  The cases we have decided involved other factors.  In *Breazeale*, we found the evidence sufficient to support a finding that defendant drove his vehicle in a reckless manner, which was necessary to support his conviction for aggravated homicide by vehicle.  ¶¶ 13-16, 245 P.3d 834, 839-40.  In that case, the driver inhaled "canned air" while parked in the lot of a store resulting in becoming unconscious for one to two minutes.  *Id.* ¶ 16, 245 P.3d at 840.  After regaining consciousness, he remained dizzy and out of it, but refused his girlfriend's offer to drive.  He then started driving, and again inhaled the canned air, again lost consciousness, and then collided with the victim's vehicle.  *Id.*  We held this conduct sufficient for a jury to find it to be reckless.  *Id.*

[¶21]   In *Relish v. State*, a semi-truck driver was convicted of aggravated homicide by vehicle.  860 P.2d 455, 461-62 (Wyo. 1993).  On appeal, he claimed that there was insufficient evidence that he was driving recklessly.  The truck driver was travelling on I-80, a road he had driven often, during a snow storm.  He drove at a minimum speed of 45 miles per hour, and perhaps as high as 60 miles per hour, when the safe speed in those conditions was 20 to 25 miles per hour.  He was in a hurry to deliver a load of perishable vegetables to Wisconsin and unconcerned about being involved in a collision.  He drove his truck completely off the paved portion of the interstate onto the shoulder where he slammed into a parked vehicle with its hazard lights on, crushing the car and victim.  He then continued down the interstate approximately one mile until his semi would go no farther.  As an experienced interstate truck driver, he was well aware of the danger of winter weather conditions on this section of I-80, and yet he pushed his 80,000 pound semi at unsafe speeds.  *Id.*  We affirmed, finding that the facts were sufficient to allow a jury to find beyond a reasonable doubt that he was operating his semi in a reckless manner.  *Id.*; *see also Rogers v. State*, 971 P.2d 599, 603 (Wyo. 1999) (concluding the evidence showed that defendant's conduct was reckless when he chose to drive his vehicle after being awake for twenty-four hours, smoking marijuana, and drinking alcohol).

5

[¶22] In *Orona-Rangal v. State,* we affirmed a conviction for aggravated vehicular homicide. 2002 WY 134, ¶ 1, 53 P.3d 1080, 1082 (Wyo. 2002). The defendant had driven his vehicle at a high speed through a stop light, killing one person and injuring two others. *Id.* We pointed out that he drove at excessive speeds, deliberately disregarded multiple stop lights, remained steadfast in his attempt to elude another person despite several near-misses with other vehicles, and that he made numerous illegal and dangerous lane changes. *Id.* ¶ 25, 53 P.3d at 1088.

[¶23] While our precedent is not directly on point, it provides context as to what conduct may be considered reckless under § 6-2-106(b)(ii).[4] Other jurisdictions have fortunately decided cases dealing with drivers who have fallen asleep, and they provide helpful insight.

[¶24] In *State v. Valyou,* the Vermont Supreme Court explained that falling asleep at the wheel does not, by itself, constitute criminal conduct. 910 A.2d 922, 924 (Vt. 2006). But when a driver is on sufficient notice of the danger of falling asleep but nevertheless continues to drive and succumbs to fatigue, his conduct may be considered criminally negligent or even reckless, depending on the circumstances. *Id.*[5] An example is the Maryland case of *Skidmore v. State,* where a driver who was drowsy continued to drive and fell asleep at the wheel. 887 A.2d 92, 94 (Md. 2005). The appellate court found sufficient evidence to fairly convince a jury of the driver's guilt beyond a reasonable doubt, as it established a reckless disregard for human life. *Id.* at 96. The driver had "admitted not only that he dozed off at the wheel, but also that he recognized his extreme drowsiness and made a deliberate decision to ignore the risk of falling asleep at the wheel as he continued driving." *Id.* at 97.

---

[4] That said, we must make clear that the test is not how Barrowes' behavior compares with other defendants in previous cases, but whether a jury could reasonably conclude, viewing the evidence in the light most favorable to the State, that he was driving recklessly and that his conduct caused the accident. *Rogers*, 971 P.2d at 603.

[5] *See, e.g., State v. S.N.R.*, 320 P.3d 569 (Or. App. 2014*)* (holding evidence was legally insufficient to find beyond a reasonable doubt that defendant consciously disregarded the risk that her tiredness presented once she became aware of it); *Clancy v. State*, 829 N.E.2d 203 (Ind. Ct. App. 2005) (reversing conviction as merely falling asleep at the wheel without evidence of consciously disregarding a substantial risk is not enough to prove recklessness); *Com. v. Huggins*, 836 A.2d 862 (Pa. 2003) (holding recklessness was established by evidence that defendant allowed himself to fall asleep while driving vehicle filled to over-capacity with children who were not secured by safety belts and that defendant elected to drive at least 23 miles per hour above speed limit of 55 miles per hour); *State v. Al-Naseer*, 690 N.W.2d 744, 752 (Minn. 2005) ("We have never held that falling asleep at the wheel is, as a matter of law, gross negligence and we decline to do so on the facts presented here.); *Conrad v. Com.*, 521 S.E.2d 321 (Va. App. 1999) (affirming conviction because the defendant motorist fell asleep while driving after he had been up for 22 hours without sleep and had dozed off a few times while driving, but chose to continue driving a long distance early in the morning); *Com. v. Petroll*, 696 A.2d 817 (Pa. Super. Ct. 1997) (finding evidence sufficient to support defendant's homicide by vehicle convictions); *People v. Shaffer*, 364 N.E.2d 109 (Ill. App. 1977) (affirming reckless homicide conviction arising from falling asleep at the wheel, finding defendant's conduct evidenced a conscious disregard of a substantial and unjustifiable risk).

[¶25]  Another example comes from Virginia, where an intermediate appellate court affirmed a bus driver's conviction for involuntary manslaughter.  It found that the evidence supported a finding that his actions were so gross[6] and wanton as to show a reckless disregard of human life.  *Kin Yiu Cheung v. Com.*, 753 S.E.2d 854 (Va. App. 2014).  That evidence indicated that he was overheard complaining that he didn't get enough sleep, bought and consumed a significant quantity of energy drinks and coffee, behaved oddly, and was weaving between lanes.  *Id.* at 856-57.  A passenger who happened to be a bus driver himself went to the front of the bus and asked if the driver was all right, but the driver sent the passenger back to his seat and continued to drive regardless.  *Id.*

[¶26]  The Virginia court explained that because one cannot drive safely while sleeping, the deliberate failure of a driver to heed clear warning signs of drowsiness is evidence of a reckless disregard for human life.  *Id.* at 858-59.  Accordingly, it concluded that under the circumstances, the driver should have known that his actions would likely cause great harm to others, as he knew that he was tired, and should have known that there was a risk he would fall asleep while driving.  *Id*.  The driver, however, chose to disregard the risk and attempted to drive a considerable length of time and distance.  *Id.*[7]

[¶27]  In this case, the record contains sufficient evidence for a jury to have concluded that Barrowes consciously disregarded a substantial and unjustifiable risk because he knew he was tired but continued to drive.  Barrowes admitted that he consciously put his schedule ahead of tiredness and ignored safety concerns relating to his impaired state.  He passed exits right before the crash even though he knew he was tired, and he unsuccessfully continued to try to fight off the fatigue which caused the fatal crash.

[¶28]  It is also significant that he was a professional driver operating a double trailer rig that weighed approximately 110,000 pounds loaded.  The risk of death from a crash

---

[6] This is a word used in the statute defining the crime.

[7] The court also noted that the bus driver

> [was] more culpable than the typical driver in this case due to the fact that he disregarded the risk that he would fall asleep while driving a bus. When driven negligently, buses present a greater risk of harm than do other vehicles. Due to their size and weight, buses are more difficult to drive than typical passenger automobiles. Accordingly, bus drivers are required to undergo additional training and pass additional tests to demonstrate their competence driving these vehicles in order to obtain licenses. Because of their weight, buses often inflict greater harm and cause more damage when they crash.

*Kin Yiu Cheung.*, 753 S.E.2d at 859-60 (citations and emphasis omitted).  The same can be said about drivers of semi-trailer truck drivers, such as Barrowes.  *See supra* ¶ 3.

involving a vehicle like this is substantial, and the requirements to obtain a CDL license to operate one should inform a commercial driver of that risk.

[¶29]  It is difficult to define the precise line of demarcation between criminal negligence and recklessness in vehicular homicide cases in which the driver causing the accident fell asleep at the wheel.  The relevant distinction between the offenses is whether the defendant consciously disregarded a substantial and unjustifiable risk, or whether he failed, through criminal negligence, to perceive that risk. *See Murray v. State*, 855 P.2d 350, 357 (Wyo. 1993).  Thus, what distinguishes the felony of aggravated vehicular homicide from the lesser offense of misdemeanor vehicular homicide is the level of awareness of a substantial and unjustifiable risk.  The degree of conscious disregard or perception depends upon the facts of each case.[8]

[¶30]  Here it is a close call as to whether Barrowes' conduct falls into the felonious category or not.  The jury could have gone either way on this evidence.  But it was the jury's decision to make, and when the evidence is viewed in the light most favorable to the State, it is sufficient to support the jury's conviction of aggravated homicide by vehicle.

[¶31]  Affirmed.

---

[8] The difference between criminally negligent conduct and reckless conduct may be slight, but the associated criminal consequences are vastly different.  The former, which is required to find a person guilty of homicide by vehicle, results in a maximum jail sentence of only one year.  Wyo. Stat. Ann. § 6-2-106(a).  On the other hand, a person with only slightly different conduct may be found to have been reckless, committing aggravated homicide by vehicle which has a maximum prison sentence of twenty years.  Wyo. Stat. Ann. § 6-2-106(b).  This case illustrates that dichotomy, as Mr. Barrowes received a substantial prison sentence although his conduct could very well have been found to be only criminally negligent.  Sentencing issues such as motions under W.R.Cr.P. 35 or proportionality claims under the Eighth Amendment of the United States Constitution are not before us at this time.