DAVIS, Chief Justice.
*1263 [¶1] Edward Barrowes was convicted of one count of aggravated vehicular homicide and sentenced to a prison term of fourteen to eighteen years. After this Court affirmed his conviction, Mr. Barrowes filed a timely W.R.Cr.P. 35(b) motion for sentence reduction. The district court denied the motion, and we affirm.
ISSUES
[¶2] Mr. Barrowes presents two issues on appeal, which he states as follows:
I. Did the district court abuse its discretion when it denied Mr. Barrowes' motion for a sentence reduction?
II. Does Mr. Barrowes' sentence constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution?
FACTS
[¶3] The incident and surrounding circumstances that led to Mr. Barrowes' conviction were described in our decision affirming his conviction on direct appeal.
Barrowes is a professional semi-trailer truck driver with a commercial driver's license. A commercial driver's license certifies that a person has gone through the required training and testing and can legally operate a commercial motor vehicle weighing over a certain amount. Those holding a commercial driver's license are subject to federal regulations because of the higher level of knowledge, experience, and skill required to drive a commercial motor vehicle.
The day before the accident, on April 21, 2015, Barrowes and his co-driver, Dennis Pehrson, departed Tremonton, Utah in a semi tractor pulling two trailers to the Denver area. They left around 4:30 p.m., and Pehrson drove the entire stretch from Utah to Colorado, while Barrowes rested in the sleeper berth behind the driver's cabin. This portion of the trip lasted until approximately 1:00 a.m. on the morning of April 22. During at least some of the time while Barrowes was to be resting in the sleeper portion of the tractor, the evidence indicated that he was sending and receiving text messages and possibly talking on the phone.
Barrowes left the sleeper berth at around 2:00 a.m., while the two were waiting to pick up the return load and return to Utah. Their freight was ready to transport around 3:30 a.m. Barrowes took the wheel for the return trip to Tremonton, and Pehrson climbed into the sleeper berth.
Around 6:45 a.m., Barrowes stopped in the vicinity of Rawlins for an hour and forty-five minutes, but it is unclear what he did during that time. He then continued west on Interstate 80.
Forty-five minutes after he got back on the road, another professional truck driver operating a tractor-trailer behind Barrowes' truck observed the vehicle swerving "pretty bad at times" for around three miles over a period of three or four minutes. The vehicle was swerving so badly that the other truck driver did not pass and instead slowed down to keep some distance between the two rigs. He observed that every time Barrowes' truck would straighten up, it would soon start swerving again. The truck passed two exit ramps while the other driver observed its erratic movements. The rig was travelling around 65 miles an hour, below the posted limit on I-80.
Meanwhile, another truck had broken down earlier on the west-bound shoulder of I-80 near Wamsutter. The owner of the vehicle, Aleksandr Kozak, came to the scene to render assistance to the driver. The rig was properly parked on the right shoulder of the road, and its hazard lights were flashing. Emergency reflective triangles were placed along the road, and Kozak *1264 wore reflective clothing. The weather was good and visibility was clear, so there were no impediments to seeing the broken-down truck.
After swerving for three to four minutes, Barrowes' truck veered right at 65 miles per hour and crashed into the parked tractor-trailer rig. The truck struck Kozak as he was working on the truck and killed him. Pehrson, who was asleep in the sleeper berth, was thrown from his bunk when the side of the cab came apart. He suffered significant injuries that were not life-threatening. Barrowes did not hit the brakes or take any other type of evasive action before the crash because he was asleep at the wheel.
Shortly after the crash, a highway patrolman arrived on the scene. Barrowes told the trooper that he "did not manage [his] drowsiness appropriately." The trooper asked Barrowes if he fell asleep at the wheel, and Barrowes said he had.
Over two hours after the crash, Barrowes sent a text message stating: "I was rushing to get to Tremonton. ... I should not have allowed my mind to be rushed." Barrowes told investigators of the Sweetwater County sheriff's office that he allowed scheduling to take precedence over tiredness, and he acknowledged that driving while drowsy is dangerous.
Barrowes v. State , 2017 WY 23, ¶¶ 3-11, 390 P.3d 1126, 1126-27 (Wyo. 2017) (footnotes omitted).
[¶4] At trial, Mr. Barrowes was represented by counsel, but at sentencing, he elected to represent himself and appeared pro se . During the sentencing hearing, he requested probation and argued at length the reasons he was not to blame for the accident that killed Aleksandr Kozak. He blamed his co-driver for creating a stressful environment with his cantankerous attitude and the Wyoming Highway Patrol for issuing prior warnings that the I-80 emergency lane is not to be used as a resting place. He summarized his initial argument with the following:
And contrary to what the prosecution says, there is absolutely zero evidence of negligence. My entire mindset was consumed by safety and safety concerns that day and the previous days. There is a word for that, it's called diligence, which incidentally is the exact opposite of negligence, the exact opposite of recklessness.
So if you want to punish supreme conscientious diligence which failed in the light of forces, if you want to punish diligence you are basically setting a precedent that destroys all civilized society. It is diligence that creates harmony, creates peace, creates every good benefit that every society enjoys. And if you want to punish that, I suggest you'll be criticized by every conscientious observer from here to the end of time.
[¶5] When the prosecution responded to Mr. Barrowes' argument, he pointed out that in forty minutes of argument, Mr. Barrowes mentioned the victim's name only once, accepted no responsibility for the accident, and showed no remorse. The prosecutor then requested a sentence of seventeen to twenty years. In response, Mr. Barrowes offered additional argument that included the following:
It seemed to me in the trial you had prosecution yelling guilty, you had defense saying not very guilty, and you had the jury wanting me to beg mercy. If ultimate diligence to our safety doesn't show a concern for life, I don't know what does. For me to cry that I did something wrong when I was doing my best would be a big fat lie. Everyone's best is insufficient. Everyone's best includes something he could have done better. But how can you get more than someone's best? It doesn't exist.
* * * *
So if you want to punish best effort, good luck with that.
[¶6] After hearing from Mr. Barrowes and the prosecutor, the district court announced what it considered to be the mitigating factors and aggravating factors to be balanced in Mr. Barrowes' sentencing. As mitigating factors, the court cited Mr. Barrowes' lack of a criminal history, his history as a responsible citizen, his steady employment, his supportive family, and the fact that Mr. Barrowes did not act intentionally to kill. As to the aggravating factors, the court observed:
*1265 There are aggravating factors. The level of recklessness in this case is aggravating to me. I think Mr. Barrowes said it somewhat like I'm going to say it. I wrote down that he was driving - when you are driving a truck that big on an interstate highway you are basically driving a potential lethal weapon. And that level of recklessness which I believe he drove that in is high.
This issue of lack of accountability, acceptance of responsibility, it's just not there. When Mr. Barrowes had the opportunity to speak today, I also noted, as pointed out by [the prosecutor], that it was all about who else was at fault, the highway patrol, his cantankerous codriver. He continues to exhibit a lack of responsibility, a lack of accountability, remorse. I'm not sure what to make of the last statements that Mr. Barrowes made to this Court, but I'm just not seeing a whole lot of remorse from him, if any, because he continues to obsess about why he was under stress and not at peace, because of his cantankerous codriver and the highway patrol.
That ties in with much of what he said with his written correspondence to the Court about duress. That was a part of the trial that really bothered me. Before I heard the trial testimony, I guess I just assumed he had - really had serious, serious issues with the Wyoming Highway Patrol, and yet when trial testimony was heard it was clear that he didn't even get tickets. I believe he was warned twice, they were warnings, there was nothing that affected his driving record. And even more telling to me was that the testimony was that there were parking areas right there, all he would have had to do is drive a few more - maybe 100 yards or more.
* * * *
He could have driven a very short distance to park [at] a better place. That was just really telling me about, again, his lack of accountability, lack of responsibility.
So as I see this case, Mr. Barrowes, you made conscious decisions to continue driving while you shouldn't have been driving because you were nodding off. The driver that followed you testified that he followed you for approximately three miles. He didn't want to pass you because you were weaving all over the road. That testimony, together with things you have said and things you ... wrote, make me understand that this was more than just nodding - just falling asleep and it all being over. This, I believe was a course of conduct that went on for some time. You passed two off-ramps, one that was one mile before the accident, one that was three miles before the accident. You didn't take advantage of them. I think [the prosecutor] said what was the worst thing that could have happened if you would have pulled over, even if you would have gotten a ticket it's better than killing someone.
So because of the decisions you made you did kill someone. You posed a grave risk not only to the person you killed, obviously, but to yourself, to your codriver, to other people on the highway.
[¶7] The district court then imposed a sentence of fourteen to eighteen years of imprisonment. Mr. Barrowes appealed his conviction and raised as his only issue on appeal the sufficiency of the evidence to support his conviction. Barrowes , ¶ 1, 390 P.3d at 1126. On March 1, 2017, this Court issued its decision affirming Mr. Barrowes' conviction, and on March 17, 2017, the mandate affirming the judgment issued.
[¶8] On March 12, 2018, Mr. Barrowes filed a Rule 35(b) motion for sentence reduction. The motion was filed through counsel and cited as grounds for the sentence reduction that Mr. Barrowes: 1) was not under the influence of any substance at the time of the accident and was not driving erratically; 2) had no history of substance or alcohol use and had a clean driving record; 3) had had his commercial driver's license (CDL) revoked and would never be in a position to again pose the same sort of danger; 4) is hard working and employable and has a wife and children who depend on him; 5) has a support system in place to aid him in getting back on his feet; 6) had undergone a psychological assessment that found no criminological indicators; and 7) had been successfully rehabilitated.
[¶9] Attached to the Rule 35(b) motion filed through counsel was Mr. Barrowes' pro *1266 se motion for sentence reduction. In support of that motion, Mr. Barrowes asserted that: 1) the Wyoming Highway Patrol's heavy-handed and terroristic behavior was to blame for the accident; 2) the justice system has a number of defects that should be addressed; 3) he was neither reckless nor negligent in causing the accident; 4) others have expressed support for him and reservation if not outright disgust with the proceedings against him; and 5) any infractions for which he was disciplined in prison were "bogus." Mr. Barrowes also cited a statement in this Court's opinion affirming his conviction that observed that his sentence was substantial in light of the slight difference between criminally negligent conduct and reckless conduct.
[¶10] On March 16, 2018, the district court issued an order denying Mr. Barrowes' motion for sentence reduction. The order stated:
THIS MATTER having come before the Court upon the Defendant's Motion for Sentence Reduction filed by Edward Christopher Barrowes, by and through counsel, ... ; and the Court having considered the request and the reasons stated therefor, and being fully advised in the premises;
IT IS HEREBY ORDERED that the Defendant's motion for sentence reduction is denied and the Defendant, Edward Christopher Barrowes, shall serve his sentence as ordered.
[¶11] Mr. Barrowes thereafter filed a timely notice of appeal to this Court.
STANDARD OF REVIEW
[¶12] We review a district court's ruling on a Rule 35(b) motion for sentence reduction as follows:
The district court has broad discretion in determining whether to reduce a defendant's sentence, and we will not disturb its determination absent an abuse of discretion. The sentencing judge is in the best position to decide if a sentence modification is appropriate, and is free to accept or reject information submitted in support of a sentence reduction at its discretion. Our objective on review is not to weigh the propriety of the sentence if it falls within the sentencing range; we simply consult the information in front of the court and consider whether there was a rational basis from which the district court could reasonably draw its conclusion. Because of the broad discretion given to the district court in sentencing, and our significant deference on appeal, this Court has demonstrated many times in recent years that it is a very difficult bar for an appellant to leap seeking to overturn a sentencing decision on an abuse of discretion argument.
Hall v. State , 2018 WY 91, ¶ 8, 423 P.3d 329, 331 (Wyo. 2018) (quoting Alford v. State , 2017 WY 105, ¶ 8, 401 P.3d 902, 903-04 (Wyo. 2017) ).
DISCUSSION
[¶13] Our rule governing motions for sentence reduction states in relevant part:
A motion to reduce a sentence may be made ... within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court ... having the effect of upholding, a judgment of conviction. ... The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.
W.R.Cr.P. 35(b).
[¶14] Mr. Barrowes contends the district court abused its discretion in denying his Rule 35(b) motion because it failed to consider his lack of culpability in causing the accident that killed Mr. Kozak. He further argues that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. Neither argument provides a basis for reversal.
A. District Court's Exercise of Discretion
[¶15] Mr. Barrowes first contends the district court abused its discretion in denying his motion for a sentence reduction because the court sentenced him at the top end of the *1267 sentencing range without properly considering his culpability. He argues he did not consciously disregard a substantial and unjustified risk and should receive a reduced sentence because he was not under the influence of alcohol or other substances, he was not speeding or otherwise intentionally driving recklessly, his vehicle and log books were properly maintained, and he had had the required number of hours of rest before his accident. This argument is misplaced in light of the question that was before the district court in sentencing and on Mr. Barrowes' Rule 35(b) motion, and in light of this Court's standard of review.
[¶16] "The purpose of Rule 35 is to give a convicted defendant a second round before the sentencing judge (a second bite at the apple as it were) and to give the judge the opportunity to reconsider the original sentence in light of any further information about the defendant." Hart v. State , 2016 WY 28, ¶ 9, 368 P.3d 877, 879 (Wyo. 2016) (quoting Boucher v. State , 2012 WY 145, ¶ 10, 288 P.3d 427, 430 (Wyo. 2012) ). Our role in reviewing the denial of a sentence reduction is limited. We do not substitute our judgment for that of the sentencing court, and the question therefore is not whether we agree with the sentence or would have imposed a different sentence. Hall , ¶ 18, 423 P.3d at 333 (quoting Hart , ¶ 7, 368 P.3d at 878 ).
[¶17] During sentencing and in his motion for sentence reduction, Mr. Barrowes argued that he was not at fault in the accident and that he did not consciously disregard a substantial and unjustifiable risk. That was not the question in sentencing, however, because the jury already answered that question in the affirmative when it found Mr. Barrowes guilty. The question in sentencing was one of balancing mitigating and aggravating factors, and the question on a motion for sentence reduction is whether the defendant offered the sentencing court a reason or reasons for altering its original balancing decision.
[¶18] A sentencing court has wide discretion in balancing the factors surrounding a defendant and his crime. Johnson v. State , 2012 WY 112, ¶ 16, 283 P.3d 1145, 1149 (Wyo. 2012). In applying those factors in this case, the district court found a substantial sentence was warranted not only because Mr. Barrowes showed a lack of remorse, but also because he was operating the equivalent of a lethal weapon on I-80, he knew he was sleepy, he knew his driving was affected by his sleepiness, he had two opportunities to exit the interstate before falling asleep, and he could have pulled off into the emergency lane but instead risked harm to others in order to avoid the possibility of a citation. In his Rule 35 motion for sentence reduction, Mr. Barrowes offered no new information to the court concerning those factors.
[¶19] Under these circumstances, we must conclude the district court had a rational basis for denying Mr. Barrowes' motion for sentence reduction. We therefore find no abuse of discretion in the court's decision.
B. Eighth Amendment Challenge
[¶20] Mr. Barrowes next contends that his sentence is illegal because it is disproportionate to his crime and thus violates the Eighth Amendment prohibition against cruel and unusual punishment. We find Mr. Barrowes' argument procedurally barred.
[¶21] Aside from the requirement that a challenge to the legality of a sentence is properly brought pursuant to Rule 35(a), not pursuant to Rule 35(b), Mr. Barrowes did not make this argument before the district court, and we do not consider new arguments on appeal. Davis v. State , 2018 WY 40, ¶ 32, 415 P.3d 666, 678 (Wyo. 2018) ("Our precedent is clear that an argument may not be made for the first time on appeal."). Even more fundamentally, however, we have held that a challenge to the legality of a sentence is barred by the doctrine of res judicata if it could have been raised and determined in a prior proceeding. Hall , ¶ 15, 423 P.3d at 332 (quoting Nicodemus v. State , 2017 WY 34, ¶ 11, 392 P.3d 408, 411 (Wyo. 2017) ). Mr. Barrowes took a direct appeal from his original conviction and failed to challenge the legality of his sentence. Because his Eighth Amendment claim could have been raised *1268 and determined in his earlier appeal, it is now barred.
[¶22] Affirmed.