**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN TERRY CHATMAN, JR.,

    Defendant - Appellant.

No. 19-5038

———————————————

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:18-CR-00166-CVE-1)**
———————————————

William Lunn, Tulsa, Oklahoma, for Defendant - Appellant.

Leena Alam, Assistant United States Attorney (and R. Trent Shores, United States Attorney, on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.
———————————————

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.
———————————————

**KELLY**, Circuit Judge.
———————————————

Petitioner-Appellant John Terry Chatman, Jr. was convicted by a jury of being

a felon in possession of a firearm and ammunition, 18 U.S.C. §§ 922(g)(1), 924(a)(2)

(Count One), obstruction of justice by attempting to kill a witness, 18 U.S.C.

§ 1512(a)(1)(C) & (a)(3) (Count Two), and using a firearm in furtherance of a crime

of violence, 18 U.S.C. § 924(c)(i)(A)(iii) (Count Three). He was sentenced to 480 months' imprisonment and five years' supervised release. On appeal, he challenges the sufficiency of the evidence supporting Count Two arguing that the government failed to provide sufficient evidence in accordance with Fowler v. United States, 563 U.S. 668 (2011). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we remand with instructions to vacate and dismiss Mr. Chatman's convictions on Counts Two and Three and resentence on Count One.

**Background**

On July 3, 2018, Officers Michael Cawiezell and Danny Bean, members of the Tulsa, Oklahoma Police Department (TPD), were conducting a routine patrol of the Trade Winds Hotel when Officer Cawiezell spotted Mr. Chatman coming around a corner of the hotel. Upon noticing the officers, Mr. Chatman changed direction, piquing their interest. They approached Mr. Chatman and asked whether he had an ID. He said no, asked if he was free to leave (to which the officers replied yes), got into a van, and drove away. After running the van's license plate, the officers discovered that it did not match the vehicle and went looking for Mr. Chatman.

They spotted the van parked at a gas pump outside of the QuikTrip convenience store adjacent to the hotel. The officers first saw Mr. Chatman's girlfriend, who identified herself as "Chelsea," coming out of the convenience store. When asked about the mis-matched plates, she said they were from her mother's Ford

2

Escape, which the officers knew to be untrue. The officers also asked her where Mr. Chatman was, and she pointed to the van.

When the officers approached the van, they found Mr. Chatman in the back seat. He told them that his name was "Junior" and repeatedly denied having an ID. Eventually, the officers informed Mr. Chatman that he was under arrest and asked him to step out of the van, which he refused to do. The officers radioed for additional support and continued asking Mr. Chatman to cooperate.

Sergeant Mike Parsons arrived on the scene awhile later. He was armed with a pepper ball gun and, after repeated attempts to get Mr. Chatman to step out of the van, shot Mr. Chatman with pepper balls. As the pepper balls began hitting Mr. Chatman, Officer Cawiezell yelled "He's got a gun!" and Mr. Chatman fired several rounds at Sergeant Parsons, who was struck in the leg. Officer Cawiezell returned fire and struck Mr. Chatman in the neck and stomach. Medics were called to the scene and promptly addressed both Mr. Chatman's and Sergeant Parsons's injuries.

Mr. Chatman did not contest Count One at trial and the parties agreed that if the evidence was insufficient on Count Two, Count Three could not stand. III R. 217. After the government rested, counsel moved for a judgment of acquittal on Count Two arguing that the government had not met its burden of showing that Mr. Chatman shot Sergeant Parsons "with the intent to prevent information from being conveyed to [federal] law enforcement officers generally." III R. 216. Counsel conceded that the government produced a large quantity of evidence suggesting that the information would have been conveyed to law enforcement. Id. In closing

3

argument, counsel argued that "the law itself doesn't seem to make a lot of sense in this context, and I think that's because it's not intended to be used in a case like this," III R. (II Tr.) 51, but conceded that it was "more than reasonably likely that an officer--or that Sergeant Parson or somebody would have communicated to federal authorities, because they did and we're here. Right?" III R. 61.

Mr. Chatman then moved for a new trial based on statistical evidence concerning state and federal prosecutions of felon-in-possession cases and ineffective assistance of counsel. I R. 70–76. He also asked the district court to reconsider its denial of the Rule 29 motion at trial. Id. at 74. Without a response, three days later, the district court denied relief on the merits of the new trial motion and denied reconsideration of the Rule 29 motion as untimely. Id. at 100–05. The district court explained that the governing legal standard was Fowler, not the cases counsel relied upon. Id. at 103. Acknowledging the possibility of plain error review on appeal, Mr. Chatman then objected to the district court's order in an effort to preserve his position that neither Fowler nor its progeny supported the conviction on Count Two. Id. at 106–15. Two days later and without a response, the district court "ordered" that Mr. Chatman had preserved his objection. Id. at 117. We deem the objection to have been denied.

On appeal, Mr. Chatman contends that the facts do not fit the crime charged, Aplt. Br. at 18, and that the government failed to present sufficient evidence to show there was a reasonable likelihood that Sergeant Parsons would have communicated with a federal law enforcement officer regarding Mr. Chatman's firearm possession.

4

If that is correct, he maintains that the companion count (Count Three) of using a firearm in furtherance of a crime of violence must also be vacated.  For its part, the government contends that Mr. Chatman waived or forfeited his sufficiency challenge without arguing for plain error on appeal, but in any event, the evidence was sufficient.

**Discussion**

We review de novo whether there was sufficient evidence to support a defendant's convictions viewing all the evidence and any reasonable inferences drawn therefrom in the light most favorable to the government.  United States v. Poe, 556 F.3d 1113, 1124 (10th Cir. 2009).  We will reverse a conviction for insufficient evidence only when no reasonable jury could find the defendant guilty beyond a reasonable doubt.  See United States v. Anaya, 727 F.3d 1043, 1050 (10th Cir. 2013).  But we will not uphold a conviction "that was obtained by nothing more than piling inference upon inference . . . or where the evidence raises no more than a mere suspicion of guilt."  United States v. Rufai, 732 F.3d 1175, 1188 (10th Cir. 2013) (quotations omitted).  "A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility."  Id. (quotations and internal alterations omitted).

The government first argues that because Mr. Chatman's Rule 29 motion was not raised on the grounds that the government failed to show a reasonable likelihood that Sergeant Parsons would have communicated Mr. Chatman's commission of the

felony to a federal officer, he has waived (or at the very least forfeited) this argument on appeal.  As discussed below, however, we find that the government failed to prove Mr. Chatman's general intent to prevent a communication to any law enforcement officer — an issue which was sufficiently preserved below and reiterated in the appellate brief  — and thus we do not address the government's waiver argument.

Mr. Chatman argues that the district court's misapplication of Fowler led to an erroneous denial of his sufficiency of the evidence challenge as to Count 2.  Under § 1512(a)(1)(C), "the [g]overnment must prove (1) a killing or attempted killing, (2) committed with a particular intent, namely, an intent (a) to 'prevent' a 'communication' (b) about 'the commission or possible commission of a Federal offense' (c) to a federal 'law enforcement officer or judge.'"  Fowler, 563 U.S. at 672 (quoting 18 U.S.C. § 1512(a)(1)(C)).[1]

---

[1] The district court instructed the jury as follows on Count Two:

Defendant is charged in Count Two with a violation of 18 U.S.C. § 1512(a)(1)(C).  This law makes it a crime for anyone to obstruct justice by attempting to kill a witness.

To find defendant guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

First: Defendant attempted to kill Sergeant Mike Parsons;

Second: Defendant acted with intent to prevent Sergeant Mike Parsons from communicating to a law enforcement officer or a judge information relating to the commission or possible commission of an offense, namely, being a felon in possession of a firearm or ammunition;

6

In Fowler, the Court discussed two different types of intent required under § 1512(a)(1)(C). The first is the "relevant broad indefinite intent" included in the statutory language, which the Court defines as "the intent to prevent the victim from communicating with (unspecified) law enforcement officers." Id. at 674. Here, there are several facts that prevent drawing even a reasonable inference that Mr. Chatman shot Sergeant Parsons with the intent to prevent him from communicating with other

---

Third: There was a reasonable likelihood that at least one of the communications targeted by Defendant would have been made to a federal officer; and

Fourth: The information that would have been communicated related to the commission or possible commission of a federal offense.

You are instructed that the United States need not prove that Defendant knew that the information related to a federal offense or knew that the communications were reasonably likely to reach a federal officer.

You are further instructed that if you find that the Defendant attempted to kill Sergeant Mike Parsons with the intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with federal law enforcement officers only if it reasonably likely under the circumstances that at least one of the relevant communications would have been made to a federal officer. To that end, the United States must show that the likelihood of communication to a federal officer was more that remote, outlandish, or simply hypothetical.

You are further instructed that the United States does not need to prove that an official proceeding was actually pending or about to be instituted at the time of the alleged offense.

I R. 52–54.

law enforcement officers.  First, Mr. Chatman's altercation with the TPD began as a routine traffic stop.  He was not stopped as part of a broader investigation or during the planning or commission of a crime.  Second, Mr. Chatman was in the backseat of the van at the time the altercation occurred, thereby lessening his chances of making a meaningful escape attempt.  Third, Mr. Chatman shot Sergeant Parsons only after he himself was struck with pepper balls.  Fourth, the shooting occurred in broad daylight while Mr. Chatman was surrounded by police officers.  And, finally, there is ample evidence that Mr. Chatman acted with the intent of provoking Sergeant Parsons as he stated "Y'all are going to have to kill me," instructed officers to shoot him, and shared a tearful goodbye with his girlfriend.  Taken together, these facts may show that Mr. Chatman shot Sergeant Parsons out of frustration and retaliation, or perhaps to sufficiently provoke the officers into shooting him thereby committing "suicide-by-cop."  But these facts in no way indicate that Mr. Chatman intended to prevent Sergeant Parsons from communicating the fact that Mr. Chatman was a felon in possession of a firearm to other law enforcement officers (a fact which was evident to the numerous law enforcement officers present at the scene).  The statute simply does not fit the crime.

A review of § 1512 (a)(1)(C) convictions in our sister circuits bolsters this conclusion.  In United States v. Bell, the Third Circuit found that the government presented sufficient evidence for the jury to infer that the defendant killed a witness hours before trial to both prevent her from testifying and put an end to her cooperation with a drug-offense task force staffed with law enforcement officers.

113 F.3d 1345, 1350 (3d Cir. 1997). The Fifth Circuit similarly upheld an intent-based sufficiency of the evidence challenge after finding that a jury could reasonably infer that the defendant shot the victim with the "inten[t] to prevent [the victim] from revealing any additional information about their prior drug negotiations" where the victim had previously been a government informant. United States v. Galvan, 949 F.2d 777, 783 (5th Cir. 1991). And the same is true of the Seventh Circuit, which found that, even though the victim was not cooperating with law enforcement at the time of his murder, "[i]t was reasonable to conclude from the testimonies provided by various persons that [the defendant and accomplice] killed [the victim] because they feared he was informing the DEA about their operations." United States v. Edwards, 36 F.3d 639, 645 (7th Cir. 1994).

The record here does not support a similar inference. Mr. Chatman was not under investigation for another crime and there is no evidence to support the idea that he shot Sergeant Parsons because he believed he had or would serve as a government informant. Rather, Mr. Chatman shot Sergeant Parsons in the middle of the day in front of at least five other law enforcement officers after expressly instructing the officers to shoot him and saying goodbye to his girlfriend. At the time of the shooting, he was sitting in the backseat of a van while police officers had firearms trained on him. And while we agree with the government's point at oral argument that an individual's intent need not be perfectly rational, a showing of intent cannot be completely divorced from the facts. Here, the facts do not support a reasonable inference that Mr. Chatman shot Sergeant Parsons with the intent of preventing him

from communicating the fact that Mr. Chatman was a felon in possession of a firearm to law enforcement officers generally. We thus find that the government failed to provide sufficient evidence to support the intent element of § 1512(a)(1)(C).

As we find the government failed to prove intent, we need not reach the question of whether the government had shown that it was "reasonably likely under the circumstances that (in the absence of the [attempted] killing) at least one of the relevant communications would have been made to a federal officer." Fowler, 562 U.S. at 677–78.

We remand this case to the district court to vacate and dismiss Mr. Chatman's convictions under both Counts Two and Three and resentence him under Count One alone.

**REMANDED.**