# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 152

OCTOBER TERM, A.D. 2020

December 16, 2020

TONYA ARLENE HIGHTOWER,

Appellant
(Defendant),

v.

S-20-0060

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, Wyoming Public Defender; Kirk Allan Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Kellsie J. Singleton, Assistant General. Argument by Ms. Singleton.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1] Tonya Hightower, a professional semi-trailer truck driver, was involved in a highway collision that resulted in a fatality. Ms. Hightower was subsequently tried by a jury and convicted of aggravated homicide by vehicle under Wyo. Stat. Ann. § 6-2-106(b)(ii). On appeal, Ms. Hightower contends the district court erred in denying her motion for judgment of acquittal because the evidence presented at trial was insufficient to show she acted recklessly. We agree and reverse.

## ISSUE

[¶2] The dispositive issue is:

> Was the evidence sufficient for the jury to conclude, beyond a reasonable doubt, that Ms. Hightower acted recklessly?

## FACTS

[¶3] The State charged Ms. Hightower with one count of aggravated homicide by vehicle. The information stated that "Defendant operated or drove a vehicle in a reckless manner, and Defendant's conduct is the proximate cause of the death of another person, in violation of Wyoming Statute § 6-2-106(b)(ii)[.]" During a three day jury trial, the State theorized that Ms. Hightower fell asleep behind the wheel. It argued she acted in a reckless manner by consciously disregarding fatigue and presented evidence in accordance with this theory.

[¶4] The bulk of the State's evidence at trial came from the testimony of two Wyoming State Troopers. Trooper Dustin Ragon, who was first on the scene, has training and experience in law enforcement, crash investigation, and commercial carriers including logbooks, electronic logging devices, and commercial driver regulations. Trooper Tyler Matheney, who also responded to the scene and investigated the crash, testified as an expert witness in crash reconstruction.

[¶5] Accepting the State's evidence as true, the facts established at trial are as follows. Ms. Hightower was a professional semi-trailer truck driver with 22 years of experience. Ms. Hightower and her husband were team drivers, which meant they alternated driving the truck, "one sleeps, one drives."

[¶6] On March 21, 2018, Ms. Hightower was driving westbound on I-80 between Cheyenne and Laramie when her truck struck a sedan and killed the driver, Mr. Vidal Madera, who was on his way to work.

1

[¶7]   Tread marks at the scene showed Ms. Hightower's truck veered left out of the westbound lane, crossed the median, and rolled over two sets of rumble strips before it entered the eastbound lanes and struck Mr. Madera's sedan. Trooper Matheney testified Ms. Hightower drove in the median for "a little more than seven seconds" before entering the eastbound lanes. The final resting place of the truck indicated it had continued across the eastbound lanes, over another rumble strip, up an embankment and through a fence before it came to rest on a small pile of rocks. Trooper Matheney said the evidence showed the truck came to an "uncontrolled rest," meaning it "came to rest [] unintentionally." Trooper Ragon testified the tread marks were over two football fields long and they showed no indication of braking, sliding or harsh steering. Trooper Matheney also testified the tread marks indicated the tires "freely" rolled the entire time—there was no skidding or sliding and "minimal, if any, steering input[.]"

[¶8]   When Trooper Ragon arrived on the scene, he found the Hightowers inside their truck. Ms. Hightower had been driving, Mr. Hightower was in the sleeper berth. Trooper Ragon asked "Why did you hit that car?" Ms. Hightower responded "I hit a car?" He testified she did not seem impaired—she did seem to be in shock, but said she was okay. Trooper Ragon testified Ms. Hightower did not know what had happened, she said she "just remembered fighting for the steering wheel." He asked if she had possibly fallen asleep and she said "she didn't think that she fell asleep."

[¶9]   Ms. Hightower was transported to the hospital where she told Trooper Ragon she had taken a hydrocodone and a promethazine nausea pill. Trooper Matheney also testified Ms. Hightower told him she took these medications, and she said she took them after the crash. Ms. Hightower consented to a blood draw[1] at the hospital, and two separate tests came back negative for any controlled substances.

[¶10]  Trooper Ragon requested the Hightowers' driving logbooks for the previous 8 days. Ms. Hightower's logs showed she began driving at about 11 p.m. the night before the collision. She drove for about 1 hour and 41 minutes, entered the sleeper berth for 1 hour and 22 minutes, drove again for about another hour and then entered the sleeper berth again for 2 hours and 2 minutes. Ms. Hightower had been driving again for 11 minutes when the crash occurred. Trooper Ragon also testified he found potential logbook violations from the days before the collision where Ms. Hightower's and Mr. Hightower's logs did not match.[2]

---

[1] When asked about his decision to test Ms. Hightower's blood rather than her urine, Trooper Ragon testified, "[i]n urine you can find prior use, but in blood you find, like, impairment and current use."

[2] Because the Hightowers are "team drivers" their logbooks should be complementary. That is, when one is driving, the other must be either "on duty not driving status" or "sleeper berth" and cannot be "off duty". In the days before the collision, the logs showed Ms. Hightower was reporting herself "off duty" while Mr. Hightower's logs showed he was driving.

[¶11]   Additionally, the evidence showed the road conditions were clear and despite some snow in the median and on the roadsides, weather was not suspected to be a contributing factor to the crash.  The crash investigation concluded there was no malfunction of Ms. Hightower's truck that contributed to the crash.  And, prior to the crash, Ms. Hightower was driving with her cruise control set below the posted speed limit.

[¶12]   After the jury heard this evidence, Ms. Hightower moved for judgment of acquittal arguing the evidence was too uncertain to show she acted recklessly.  The court denied the motion and gave the case to the jury who found Ms. Hightower guilty.  Ms. Hightower was sentenced to 10-20 years in prison.

## STANDARD OF REVIEW

[¶13]   "[T]he standard of review for a denial of a motion for judgment of acquittal is the same as that used when an appeal claims insufficient evidence to convict because both challenge the sufficiency of the evidence." *Kuebel v. State*, 2019 WY 75, ¶ 26, 446 P.3d 179, 187 (Wyo. 2019) (citing *Foltz v. State*, 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017)).  When applying this standard, "[w]e 'accept as true the State's evidence and all reasonable inferences which can be drawn from it.'" *Id.* ¶ 27, 446 P.3d at 187 (quoting *Hyatt v. State*, 2018 WY 84, ¶ 10, 422 P.3d 524, 527–28 (Wyo. 2018)).  We simply determine "whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented." *Morones v. State*, 2020 WY 85, ¶ 8, 466 P.3d 300, 303 (Wyo. 2020) (quoting *Gonzalez-Chavarria v. State*, 2019 WY 100, ¶ 22, 449 P.3d 1094, 1099 (Wyo. 2019)).

## DISCUSSION

[¶14]   Ms. Hightower was convicted of aggravated homicide by vehicle.  The applicable statute states:

> (b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
>
> * * *
>
> (ii) [She] operates or drives a vehicle in a reckless manner, and [her] conduct is the proximate cause of the death of another person.

Wyo. Stat. Ann. § 6-2-106(b)(ii) (LexisNexis 2019).

[¶15]  Ms. Hightower argues the State failed to present sufficient evidence to prove she acted in a reckless manner.  *See id.*  According to Wyoming's Criminal Code:

> A person acts recklessly when [s]he consciously disregards a substantial and unjustifiable risk that the harm [s]he is accused of causing will occur, and the harm results.  The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

Wyo. Stat. Ann. § 6-1-104(a)(ix) (LexisNexis 2019).  "We have held that this definition applies to aggravated vehicular homicide cases."  *Barrowes v. State*, 2017 WY 23, ¶ 17, 390 P.3d 1126, 1128 (Wyo. 2017) (citing *Breazeale v. State*, 2011 WY 10, ¶ 15, 245 P.3d 834, 839–40 (Wyo. 2011)).

[¶16]  The State thus had to prove beyond a reasonable doubt that Ms. Hightower acted recklessly—that she consciously disregarded a substantial and unjustifiable risk that her driving would cause the death of another.  *See Hereford v. State*, 2015 WY 17, ¶ 14, 342 P.3d 1201, 1204 (Wyo. 2015); Wyo. Stat. Ann. §§ 6-2-106(b)(ii), 6-1-104(a)(ix); *Barrowes*, ¶¶ 27–30, 390 P.3d at 1131.  Only upon the State's satisfaction of this burden could the jury reasonably conclude Ms. Hightower was guilty.

[¶17]  In *Barrowes* we recognized the difficulty of determining recklessness in these types of cases and stated that such a determination "depends upon the facts of each case." *Barrowes*, ¶ 29, 390 P.3d at 1131.  Mr. Barrowes, also a professional semi-trailer truck driver, was convicted of aggravated vehicular homicide after he struck and killed a man whose vehicle was broken down on the roadside.  *Id.* ¶¶ 8–9, 390 P.3d at 1127.  Though we acknowledged "[t]he jury could have gone either way," *id.* ¶ 30, 390 P.3d at 1131, we ultimately determined the evidence was sufficient to support the jury's conclusion that Mr. Barrowes acted recklessly because he admitted he consciously disregarded his fatigue and fell asleep while driving.  *Id.* ¶ 27, 390 P.3d at 1127.  This case is different.

[¶18]  Ms. Hightower never admitted she was fatigued, let alone that she consciously disregarded any fatigue.  Trooper Ragon testified that, immediately following the crash, "she didn't think that she fell asleep."  The State therefore relies on the following evidence and testimony to support Ms. Hightower's conviction: evidence regarding hydrocodone and promethazine; Ms. Hightower's potential logbook violations in the days before the collision; Ms. Hightower's short resting patterns immediately before the collision; the tire tread evidence indicating a lack of steering and braking despite the length of time and distance Ms. Hightower's truck traveled after it left the westbound lanes; and the fact that immediately after the crash, Ms. Hightower was unaware she had hit a car.  The State claims the jury could "reasonably conclude [Ms.] Hightower was aware of her fatigue and

4

the risk associated with driving while drowsy and chose to drive anyway" by drawing reasonable inferences from this evidence.

[¶19] Given the State's reliance on inference, "we must guard against a conviction obtained by adding inference to inference." *Seeley v. State*, 959 P.2d 170, 175–76 (Wyo. 1998) (citation omitted). Where a conviction is procured in part on inference, such "inferences must be based on more than speculation and conjecture[.]" *Id.* (citation omitted). The State must establish more than a mere suspicion of guilt. *See Virgilio v. State*, 834 P.2d 1125, 1134 (Wyo. 1992) (citations omitted); *United States v. Chatman*, 952 F.3d 1211, 1214 (10th Cir. 2020).

[¶20] The Tenth Circuit Court of Appeals has explained,

> [t]he line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncracies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.

*Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987) (citations omitted).

> The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, "the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one."

*United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005) (quoting *United States v. Shahane*, 517 F.2d 1173, 1178 (8th Cir. 1975)).

[¶21] Our analysis thus begins where the State's evidence leaves off. The critical question is whether the jury could draw permissible inferences to bridge the wide gap between the evidence the State presented and its ultimate conclusion that Ms. Hightower was fatigued

5

and consciously disregarded her fatigue. *See id.* We conclude the jury could not permissibly bridge that gap. Too much doubt clouds its conclusion.

[¶22] We first consider the State's evidence concerning the hydrocodone and promethazine. Trooper Ragon testified that when he arrived at the accident site Ms. Hightower did not seem impaired. Both troopers testified Ms. Hightower told them she took the medications. Trooper Matheney testified Ms. Hightower told him she took them after the crash. However, blood tests taken following the accident showed no presence of controlled substances. To infer from this evidence that she was lying about when she took the medication, and to use that inference to further infer Ms. Hightower actually took the medications before the crash, and then on the basis of that inference further infer she consciously disregarded the side effects of those drugs and chose to drive anyway, would illogically require the jury to disregard direct evidence that Ms. Hightower was not impaired and instead base its conclusion on conjecture and speculation.[3] This succession of attenuated inferences offers no reasonable probability that the jury's conclusion derived from the proven facts.

[¶23] Considering the possible, prior logbook violations, the State argues it could not say with certainty whether Ms. Hightower was within her legally allowed driving hours[4] when the accident occurred. Notably, however, the State fails to further explain how the jury could infer from this evidence that Ms. Hightower consciously disregarded fatigue. As the State's argument is grounded in uncertainty, any explanation it might provide would also be grounded in conjecture. The absence of any logical probability that the jury could conclude Ms. Hightower consciously disregarded her fatigue because of possible, prior logbook violations is obvious.

[¶24] Evidence that Ms. Hightower failed to steer and brake both before and after striking Mr. Madera's sedan, coupled with her lack of knowledge of what happened may support a reasonable inference she fell asleep, but it does not support the jury's conclusion that Ms. Hightower acted recklessly. Neither Trooper Ragon nor Trooper Matheney testified Ms. Hightower ever suggested she was fatigued or not well-rested. To the contrary, Ms. Hightower had just returned from a break. Immediately after the accident she told Trooper Ragon she did not think she fell asleep. Thus, to bridge the gap between a reasonable inference Ms. Hightower fell asleep at the wheel and the necessary ultimate conclusion that she consciously disregarded her fatigue, the State relies on Ms. Hightower's short resting patterns immediately preceding the collision; testimony from Trooper Matheney that those patterns were inconsistent with industry norms; and testimony from Trooper Ragon that based on his training and experience, such patterns were uncommon for commercial drivers and indicated "possible fatigue or tiredness." This evidence is largely speculative and

---

[3] "Guesswork cannot be substituted for evidence or inference, for 'an inference is the conclusion drawn on reason from premises established by proof. In a sense, it is the thing proved. Guesswork is not.'" *Wright v. Conway*, 34 Wyo. 1, 242 P. 1107, 1110 (Wyo. 1926) (citation omitted).
[4] Federal regulations limit how many hours a professional truck driver can drive.

6

cannot bridge the wide gap between falling asleep and knowing you are fatigued but choosing to drive anyway. Though Ms. Hightower's resting patterns may have been uncommon and could indicate "fatigue or tiredness," they could just as possibly indicate she was alert following her rest. Because recklessness under Wyo. Stat. Ann. § 6-1-104(a)(ix) does not logically spring from the State's evidence or the inference Ms. Hightower fell asleep at the wheel, the State established a mere suspicion of Ms. Hightower's guilt.

## *CONCLUSION*

[¶25] The district court erred in denying Ms. Hightower's motion for judgment of acquittal because the State's evidence, taken as true, was insufficient for the jury to conclude beyond a reasonable doubt that she acted recklessly. Ms. Hightower's aggravated homicide by vehicle conviction cannot stand on the inferences on which the State relied. We therefore reverse her conviction.