# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 93

APRIL TERM, A.D. 2021

*August 16, 2021*

DOMINQUE PATRICK CHILDERS,

Appellant
(Defendant),

v.

S-20-0236

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\* Chief Justice at time of brief-only conference.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Dominique Childers was convicted of two counts of attempted second-degree murder, two counts of felony property destruction, one count of misdemeanor property destruction, one count of felony possession of methamphetamine, one count of reckless endangering, and one count of eluding peace officers after he led law enforcement on a high-speed chase through Cheyenne, Wyoming.  He challenges two of his convictions for property destruction and argues that the evidence presented was insufficient to show that he knowingly caused property damage.  He also challenges his conviction for felony possession of methamphetamine, claiming the evidence was insufficient to show that he possessed more than three grams, as required by Wyo. Stat. Ann. § 35-7-1031(c)(ii).  We affirm.

## ISSUE

[¶2]    Mr. Childers presents a single issue on appeal, which we restate as follows:

> Did the district court err when it denied Mr. Childer's motion
> for judgment of acquittal?

## FACTS

[¶3]    On May 3, 2019, Trooper Adam Powell with the Wyoming Highway Patrol was on patrol on Interstate 25 north of Cheyenne.  At approximately mile post 24, he observed two vehicles traveling southbound towards Cheyenne, both exceeding the posted 80-mile-per-hour speed limit.  The first vehicle was going 96 miles per hour, and the rear vehicle was going 98 miles per hour.  Trooper Powell turned around in the median and began to follow the two vehicles.

[¶4]    Trooper Powell caught up to the first car, which had already slowed down.  He activated his overhead lights, pulled it over, and instructed the driver to follow him so he could pull over the second vehicle.  At approximately mile post 18 he caught up to the second vehicle, which was a black Toyota sedan traveling at approximately 113 miles per hour. Trooper Powell activated his lights and sirens and attempted to pull the vehicle over, but the driver of the Toyota failed to comply, and a high-speed chase ensued.

[¶5]    The driver of the Toyota, later identified as Dominique Childers, continued to drive approximately 115 miles per hour and then exited the interstate at exit 13, Vandehei Avenue.  Mr. Childers was still driving at a high speed when he hit the roundabout off exit 13, and then he returned to the interstate and continued southbound. He exited the interstate again at exit 12, Central Avenue, and then drove through a stop sign and oncoming traffic onto the Interstate 25 on-ramp.  Instead of continuing down the on-ramp, he swerved to the

1

right side of the ramp and traveled through the median into the parking lot of the Wyoming Department of Transportation and the Wyoming Highway Patrol.

[¶6]     After the Toyota drove through the parking lot, the driver's door opened, and it came side-by-side with Trooper Powell's pursuing vehicle.  Trooper Powell was able to observe a male driver, later identified as Mr. Childers, and a female passenger, later identified as Chasity Jacobs.

[¶7]     Instead of stopping, Mr. Childers continued to elude Trooper Powell.  Trooper Powell continued pursuing the vehicle, which was then traveling eastbound on Central Avenue.  At this point, Childers' vehicle was missing a tire, and he was driving recklessly, even in the center lane of traffic at times.

[¶8]     In an attempt to stop the vehicle before it entered the city limits and endangered more citizens, Trooper Powell attempted a tactical vehicle intervention.  However, when he got his patrol car into position to perform the maneuver, he saw a silver pistol come out of the passenger window, and multiple rounds were fired in his direction.  Consequently, he hit his brakes and distanced his vehicle from the Toyota.  Mr. Childers continued on Central Avenue towards downtown Cheyenne with the trooper still in pursuit.

[¶9]     Shortly after the first shots were fired, Trooper Powell again had to swerve because an arm holding a pistol came out the driver's window and shots were once more fired in his direction.  As the chase continued, more shots were fired out the back of the Toyota, causing its back window to burst and Trooper Powell's front windshield to spiderweb.  As shots continued to be fired, Mr. Childers continued traveling towards the residential and commercial portions of Cheyenne, and more law enforcement officers joined the pursuit.

[¶10]   At some point, Mr. Childers turned northbound on Central Avenue, going the wrong way on that one-way street.  Lyndsey Smith and her husband were pulled to the side of the road in the far-left lane of Central Avenue at 17th Street.  Ms. Smith testified that Mr. Childers attempted to avoid hitting her vehicle head-on by swerving towards the sidewalk, which caused him to instead hit the driver's side of her vehicle and a planter and tree on the sidewalk.  He continued to elude police after the collision, traveling through intersections and neighborhoods at a high rate of speed.

[¶11]   At this point, Officer Mark Ehlman with the Cheyenne Police Department was directly behind Childers' vehicle.  Officer Geffery Eugene Mims of the Department was also pursuing the vehicle and calling out to his dispatcher each time shots were fired from Childers' vehicle.

[¶12]   At the roundabout connecting 19th Street, Pershing Boulevard, and Converse Avenue, Officer Ehlman witnessed more shots being fired in the direction of law enforcement officers and decided to attempt a stop to prevent injury to other vehicles or

citizens.  He drove up to the driver's side of the Toyota, pointed his service weapon out his passenger window, and fired several times towards the driver.  Mr. Childers swerved north and drove across a sidewalk and through a fence, and then crashed into an embankment at the Cheyenne Veterans Affairs Medical Center.

[¶13]  Mr. Childers exited the vehicle with his hands in the air and got on the ground.  Ms. Jacobs exited the passenger side, walked backward to the street, and also got on the ground.

[¶14]  Trooper Tyler Matheney secured Mr. Childers and took him into custody.  When he did a pat-down, he found a bag of suspected methamphetamine in Mr. Childers' front left pants pocket.  Special Agent Jason Moon with the Wyoming Division of Criminal Investigation (DCI) later processed the suspected methamphetamine and submitted it to the Wyoming State Crime Lab for examination and analysis.  Special Agent Moon also weighed the substance and later testified that it weighed 4.36 grams.

[¶15]  Mr. Childers was transferred to Cheyenne Regional Medical Center by ambulance, where he was interviewed by Special Agent Jon Briggs and Officer Matthew Leibovitz of the DCI Southeast Enforcement Team.  During the interview, he stated that he had used methamphetamine that day and was attempting to get away from law enforcement because he had methamphetamine in his pocket that he did not want law enforcement to find.  He also admitted that he shot at law enforcement and drove the wrong way on one-way streets in an attempt to elude police.

[¶16]  Mr. Childers was charged with two counts of attempted first degree murder, two counts of felony property destruction, two counts of misdemeanor property destruction, one count of felony possession of methamphetamine, one count of reckless endangering and one count of eluding.  A jury trial was held on December 3, 2019, to December 10, 2019.

[¶17]  After the close of the State's evidence, defense counsel moved for judgment of acquittal pursuant to Rule 29 of the Wyoming Rules of Criminal Procedure on the felony property destruction count involving Ms. Smith's vehicle and the misdemeanor property destruction count involving the planter and tree.  Defense counsel argued that the evidence was insufficient to show that Mr. Childers knowingly defaced or injured the property.  He also moved for judgment of acquittal on the felony possession of methamphetamine count. He argued that while there was some evidence that the weight was over three grams, the evidence was not corroborated by the state crime lab.  The district court noted it was troubled by the lack of evidence with respect to the felony possession charge, but it denied the motion.

[¶18]  The defense did not put on a case. The jury returned a guilty verdict on all counts except the two counts of attempted first degree murder.  With respect to those counts, the jury instead convicted Mr. Childers of the two lesser included offenses of attempted second

degree murder. He was sentenced to consecutive terms of 25 to 35 years for the two counts of attempted second degree murder and concurrent terms of five to seven years for the two counts of felony property destruction, five to seven years for felony possession of methamphetamine, one year for reckless endangering, six months for misdemeanor property destruction, and six months for eluding. Mr. Childers filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶19] "The standard of review for a denial of a motion for judgment of acquittal is the same as that used when an appeal claims insufficient evidence to convict because both challenge the sufficiency of the evidence." *Hightower v. State*, 2020 WY 152, ¶ 13, 477 P.3d 103, 105 (Wyo. 2020). "We do not reweigh the evidence or reexamine the credibility of witnesses, but examine the evidence in the light most favorable to the State." *Mackley v. State*, 2021 WY 33, ¶ 24, 481 P.3d 639, 645 (Wyo. 2021). "[W]e examine and accept as true the evidence of the prosecution together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict therewith." *Byerly v. State*, 2019 WY 130, ¶ 106, 455 P.3d 232, 258 (Wyo. 2019) (quoting *Bruce v. State*, 2015 WY 46, ¶ 52, 346 P.3d 909, 926 (Wyo. 2015)). In other words, "[w]e simply determine whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented." *Hightower*, ¶ 13, 477 P.3d at 105 (citation and internal quotation marks omitted); *see also Byerly*, ¶ 106, 455 P.3d at 258 ("[O]ur duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.").

## DISCUSSION

### I. *Is there sufficient evidence to support Mr. Childers' conviction for property destruction?*

[¶20]     A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.

Wyo. Stat. Ann. § 6-3-201(a) (LexisNexis 2021).

[¶21] In *Morris v. State*, we recognized that the word "knowingly" in § 6-3-201(a) does not have a technical meaning. 2009 WY 88, ¶ 11, 210 P.3d 1101, 1104-05 (Wyo. 2009). We said "that the ordinary meaning of 'knowingly' is 'with awareness, deliberateness, or intention' as distinguished from inadvertently or involuntarily." *Id.* (citing *Butz v. State*, 2007 WY 152, ¶ 20, 167 P.3d 650, 655 (Wyo. 2007), *abrogated on other grounds*, *Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008)). Stated another way, we reiterated that

4

a defendant violates "§ 6-3-201(a) if, with awareness, deliberateness or intention, he defaced the vehicle; it likewise is clear that he did not violate the provision if he inadvertently or involuntarily defaced the vehicle." *Morris*, ¶ 11, 210 P3d at 1105.

[¶22]  Mr. Childers does not dispute that he caused damage to Ms. Smith's vehicle and the planter and tree owned by the City of Cheyenne.  He instead argues that he acted inadvertently or involuntarily because he was attempting to elude law enforcement and swerved onto the sidewalk to avoid hitting Ms. Smith's vehicle when he unintentionally caused the damage.  He contends that the evidence was therefore insufficient to establish the "knowingly" requirement.

[¶23]  The State relies on *Hopkins v. State*, 2019 WY 77, 445 P.3d 582 (Wyo. 2019), and argues that the "knowingly" element of the crime was established by Mr. Childers' voluntary actions immediately prior to the damage.  It contends that it is not required to show that Mr. Childers purposely hit the car, tree, and planter, and that his acts of intentionally eluding law enforcement by engaging in a high-speed car chase establish the requisite mens rea.  We agree.

[¶24]  In *Hopkins*, we held that the State was not required to prove that the defendant purposefully hit the victim's vehicle to demonstrate that he acted knowingly as required by the aggravated assault and battery statute.  ¶¶ 7-16, 445 P.3d at 585-87.  We found the defendant's testimony that he was driving under the influence of an inhalant when he struck another car and caused injury to the driver was sufficient to prove that he acted knowingly. *Id.* ¶¶ 16, 27, 445 P.3d at 587, 589-90.  We held that for general intent crimes the only requirement necessary to prove that an accused acted "knowingly" is that the proscribed conduct which caused the result was done voluntarily. *Id.* ¶ 11, 445 P.3d at 586.  We reasoned that:

> "Although a voluntary act is an absolute requirement for criminal liability, not every act up to the moment that the harm is caused must be voluntary." 1 Wayne R. LaFave, *Subst. Crim. L.* § 6.1(c) at 578-79 (3d ed. 2018) (footnote omitted). And, while the voluntary act must "concur" with the mental fault, "the emphasis is upon results caused by the defendant, and any act or omission (with the prescribed state of mind) which causes that result will do." *Id.* § 6.3(c) at 617. A person, therefore, may be guilty of criminal homicide or battery even though he is unconscious or asleep at the time of the fatal or injurious impact. *Id.* at 618. For example, if *A* drives when he is extremely sleepy and hits another vehicle killing (or seriously injuring) a passenger, the act—which causes the death—is continuing to drive while knowing he is sleepy, which coincides with the required mental state. *Id.*

5

*Id.* ¶ 12, 445 P.3d at 586.

[¶25] It is undisputed that Mr. Childers voluntarily attempted to elude police and was engaged in a high-speed chase when he caused the property damage. Mr. Childers stated in his police interview that he was under the influence of methamphetamine and that he was trying to get away from law enforcement because he had methamphetamine in his pocket. His voluntary and intentional conduct of eluding police in a high-speed chase and driving while under the influence of methamphetamine is the conduct that produced the proscribed result and damage. *See, e.g.*, *Hopkins*, ¶ 13, 445 P.3d at 586-87. The evidence and the reasonable inferences that could be drawn from it were therefore sufficient to support a finding of guilt, and the district court did not err in denying Mr. Childers' motion for a judgment of acquittal on the two property destruction counts.

## II.     *Does sufficient evidence support Mr. Childers' conviction for felony possession of methamphetamine?*

[¶26] Mr. Childers next contends that the district court erred in denying his motion for judgment of acquittal for felony possession of methamphetamine. He asserts that the evidence received at trial was insufficient to prove that he possessed more than three grams of methamphetamine because there was no testimony that the recorded weight excluded packaging and that there was no laboratory analysis of the suspected methamphetamine.

[¶27] Under Wyoming law, whether the possession of methamphetamine constitutes a misdemeanor or felony offense depends on the weight and form of the controlled substance. Wyo. Stat. Ann. § 35-7-1031(c) (LexisNexis 2021); *Mathewson v. State*, 2019 WY 36, ¶ 73, 438 P.3d 189, 213 (Wyo. 2019). The felony possession statute requires that the possessed methamphetamine weigh more than three grams. Wyo. Stat. Ann. § 35-7-1031(c)(i)(C)-(D), (c)(ii). That weight must exclude any packaging material. Wyo. Stat. Ann. § 35-7-1031(d) ("For purposes of determining the weights to be given the controlled substances under this section, the weights designated in this section shall include the weight of the controlled substance and the weight of any carrier element, cutting agent, diluting agent or any other substance excluding packaging material.").

[¶28] Mr. Childers told law enforcement that he ran from them because he had methamphetamine in his pocket. Additionally, Amanda Heeren, a senior forensic analyst and toxicology technical leader with the Wyoming State Crime Laboratory, testified that Mr. Childers had approximately 770 nanograms of methamphetamine in his system, which is seven times more than a therapeutic level normally prescribed for a controlled substance.

[¶29] As to the weight of the methamphetamine, Special Agent Moon testified to his extensive experience and training in narcotics investigations, and that he weighed the methamphetamine at 4.36 grams.

Q. Okay. Was there a reason that -- aside from a pursuit and a crash, was there a reason to believe that there would be evidence of a controlled substance in Mr. Childers' blood?

A. Yes, ma'am.

Q. And what evidence was that?

A. At the time Trooper Matheney took Mr. Childers into custody and then began first aid on him, Trooper Matheney, to access his wounds or injuries, cut his clothes off. And in doing that I believe he searched his clothes and located a baggie of suspected methamphetamine in his front left pants pocket, on one of his sets of pants.

Q. What do you mean by that, one of his set of pants?

A. He had a set of shorts on and a set of, like pants on.

Q. Okay. Mr. Childers did?

A. Yes.

Q. Okay. So as part of protocol for rendering aid and then taking into custody Mr. Childers, there were items that were obtained; is that correct?

A. Yes, ma'am

Q. Among them methamphetamine suspected?

A. Yes, ma'am.

                    *    *    *

Q. Agent Moon, do you have firsthand knowledge of the methamphetamine that was at issue on May 3rd?

A. Yes, ma'am.

Q. Could you please tell the jury what that is. What's the basis of your first hand knowledge?

7

A. When we were called there -- or when I arrived there I observed it on the ground where Mr. Childers was placed or had -- basically when he came out in front of the trooper's vehicle, was called out by police officers, put down on the ground, and then Trooper Matheney secured him.

Q. Okay. So Trooper Matheney secured Mr. Childers, and that's when the suspected methamphetamine was located?

A. Yes, ma'am.

Q. And where was that?

A. It was in his front left pants pocket.

Q. And by "his", you mean who?

A. Mr. Childers.

Q. Thank you. And did you see that suspected methamphetamine on May 3rd?

A. Yes, ma'am.

Q. And what happened to that?

A. It was -- as part of -- once it was processed, as we were processing the scene it was documented and photographed. And then at the end of the night it was collected by the Wyoming State Crime Lab Response Team.

* * *

Q. And can you tell the jury, what is State's Exhibit 276?

A. This is one baggie of suspected methamphetamine as it's listed on it. It is Item -- it is D.C.I., my Item No. 1012. It is Lab Item No. 26. It is Exhibit 276.

Q. And how do you know that is the suspected methamphetamine from May 3rd?

8

A. It has my badge number, my initials, the date from 5-6-19 when I actually packaged it, and the time of 5:56 p.m. with the top of the -- the tape on the top, the seal on the top.

* * *

Q. Agent Moon, do you have a basis of knowledge for the amount of suspected methamphetamine that was seized on May 3rd?

A. Yes, ma'am. I weighed it.

Q. You weighed it personally?

A. (Witness nodded head.)

* * *

Q. Agent Moon, what was the weight of the suspected methamphetamine on May 3rd?

A. It was 4.36 grams.

Q. And just now I saw you look at the envelope when you gave that answer. Is that weight recorded on the envelope?

A. Yes, ma'am.

Q. And you indicated that, based on the envelope, you know it was analyzed by the crime lab; is that correct?

A. Yes ma'am.

[¶30] In *Lewis v. State*, we found that the testimony of the agent who conducted the drug investigation, the trooper who conducted the stop, and a passenger in the vehicle was sufficient for a jury to conclude that a substance found in the trunk of the car was more than three ounces of marijuana. 2018 WY 136, ¶ 17, 430 P.3d 774, 778 (Wyo. 2018). In reaching that conclusion, we held "[e]xpert testimony is not always required to identify a substance . . . or the weight of the substance." *Lewis*, ¶ 16, 430 P.3d at 778 (citing *Regan v. State*, 2015 WY 62, ¶¶ 34-35, 350 P.3d 702, 709 (Wyo. 2015); *Leyva v. State*, 2005 WY 22, ¶ 11, 106 P.3d 873, 876-77 (Wyo. 2005)).

[¶31] Given Mr. Childers' statement that he was carrying methamphetamine and the forensic analyst's testimony that Mr. Childers had methamphetamine in his system, we are satisfied that the evidence was sufficient for the jury to find that the substance found in his pocket was methamphetamine. As to its weight, Agent Moon testified to his extensive training and expertise in narcotics investigations, and when he was asked "the weight of the suspected methamphetamine," he testified that it weighed 4.36 grams. Considering that training and experience and viewing his testimony in the light most favorable to the State, we conclude that the jury could reasonably infer that the methamphetamine itself weighed 4.36 grams. The evidence was thus sufficient for the jury to conclude that Mr. Childers possessed a felony quantity of methamphetamine.

## CONCLUSION

[¶32] The district court properly denied Mr. Childers' motion for judgment of acquittal. Mr. Childers' knowing and voluntary act of driving while under the influence of methamphetamine and his attempt to elude law enforcement by engaging in a high-speed chase provided the required mens rea to impose criminal liability for property destruction under Wyo. Stat. Ann. § 6-3-201(a). The evidence was also sufficient for the jury to determine beyond a reasonable doubt that Mr. Childers was guilty of felony possession of methamphetamine under Wyo. Stat. Ann. § 35-7-1031(c)(ii).

[¶33] Affirmed.